UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| Mark B. Mumley, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | File No. 1:06-CV-137 |
| | : | |
| Robert Hofmann, Stuart | : | |
| Gladding, Tim Simoneau, | : | |
| Todd Blanchard, Vermont | : | |
| Department of Corrections | : | |
| Employees, Cognitive Self | : | |
| Change Facilitators, | : | |
| Christian Corriveau, and | : | |
| Clint Glover, | : | |
| Defendants. | : | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 119 and 120)

Plaintiff Mark Mumley, a Vermont inmate proceeding *pro se*, brings this action complaining that he was wrongfully denied sentence credit for participation in a Cognitive Self-Change ("CSC") program. Currently pending before the Court is the defendants' motion to dismiss based upon Mumley's failure to respond to discovery requests and comply with Court orders. For the reasons set forth below, I recommend that the motion to dismiss be GRANTED and this case be DISMISSED with prejudice.

### Background

Mumley commenced this action on July 11, 2006, claiming that was wrongfully terminated from the CSC program. He has

since amended or moved to amend his complaint at least six times, raising facts pertaining not only to the CSC program, but also to the conditions of his interstate transports and his desire to serve his prison time at a work camp. (Papers 18, 20, 28, 45, 62, 65). While it is not entirely clear which claims he is still pursuing, Mumley's most recent amended complaint again focuses on the CSC program, alleging that he is not being given adequate credit for the program he attended while incarcerated out of state. (Paper 65).

On March 30, 2007, the defendants served Mumley with discovery requests. On April 21, 2008, over one year later, they moved to compel his responses and, in the alternative, for dismissal of the case. The Court granted the motion to compel, denied the motion to dismiss, and required Mumley to respond to defendants' requests by June 4, 2008. The Court also warned Mumley that if he failed to comply with the order, it could dismiss the case pursuant to Fed. R. Civ. P. 37. (Paper 112 at 2).

On June 18, 2008, the defendants again moved to dismiss. The motion was based upon Mumley's continued failure to provide discovery responses and his failure to comply with the Court's order. The Court denied the motion

to dismiss, but struck Mumley's pending motion for summary judgment as a sanction for his failure to respond to the defendants' discovery requests. (Paper 117 at 6). The Court also set a new deadline of August 22, 2008 for discovery responses, and warned that Mumley's failure to comply with this deadline would result in "severe sanctions, most likely including dismissal of his case." Id. at 7.

Mumley has still not responded to the outstanding discovery, and until only recently had failed to provide any reason for the exceptional delay. On September 24, 2008, the defendants moved a third time to dismiss the case. Mumley responded with a motion for protective order, claiming that he was unable to work on the litigation because his life was in danger and the defendants were retaliating against him. Specifically, he claimed that his life was at risk due to his alleged involvement in fighting terrorism, and because he had provided information to prosecutors about a fellow prisoner. As to the defendants' allegedly retaliatory acts, these came in the form of "inferences with mail and threats by defendants that I will be placed back in prison if I don't stop sueing [sic] them." Moreover, when he tried to work on the litigation, he would

allegedly suffer from a "weird headache in which I feel as if I am being pulled back from attempts to litigate." Finally, Mumley alleged that after he had drafted his discovery responses, they were destroyed by the "defendants['] agents."  (Paper 120 at 1-2).

In conjunction with his motion for protective order, Mumley moved for an extension of time in which to oppose the motion to dismiss.  In that filing, he explained that he was released on furlough in March 2008 "with no winter cloths [sic], no gate money, no reintegration monies."  After living in several different locations and working at various jobs, his furlough was revoked when he was charged with possessing stolen property.  Once back in prison, he was limited to 45 minutes of library time per day, and on one occasion the prison computer allegedly lost 12 pages of text.  Citing these alleged impediments to his ability to perform legal work, Mumley requested that the Court "freeze this case until the Plaintiff is in a stable home where he can litigate his claim without threats of retaliation from defendants."  (Paper 121).  The Court denied his request, but granted him an extra 30 days in which submit his opposition to the motion to dismiss.  Subsequent requests

4

for extra time were also granted.

On January 21, 2009, with a supplement filed on February 10, 2009, Mumley opposed the motion to dismiss. (Papers 131 and 133). His filings offered several reasons for continued non-compliance, some of which had been presented previously. A new allegation was that his computer discs had been either lost, stolen or confiscated. He also blamed the defendants for his re-incarceration, and reiterated his belief that he may soon be dead "from stress or actually killed or dead from eating razor blades in my food . . . ." (Paper 133 at 2). No effort was made to respond to the discovery requests in his lengthy opposition.

## Discussion

The defendants have filed their motion to dismiss pursuant to Fed. R. Civ. P. 37. In selecting the appropriate sanction under Rule 37, courts consider a variety of factors, including: "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences . . . noncompliance." Nieves v. City of New York, 208 F.R.D. 531,

535 (S.D.N.Y. 2002) (citing Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852-54 (2d Cir. 1995)). The most severe sanctions should not be imposed unless the failure to comply with a discovery order "'is due to willfulness, bad faith, fault or gross negligence, rather than inability to comply or mere oversight.'" Handwerker v. AT&T Corp., 211 F.R.D. 203, 209 (S.D.N.Y. 2002) (quoting Hochberg v. Howlett, 1994 WL 174337, at *3 (S.D.N.Y. May 3, 1994)); see also Salahuddin v. Harris, 782 F.2d 1127, 1132 (2d Cir. 1986).

Mumley claims that he has been unable to participate in this litigation due to his life circumstances. The reasons he cites includes threats to his life, limitations on his law library time, loss of computer work, and loss or confiscation of computer discs. Notwithstanding these claims, the Court notes that in the six months after service of the defendants' discovery, Mumley submitted approximately 15 filings with the Court. (Papers 57, 61, 62, 63, 64, 65, 68, 69, 73, 75, 76, 81, 85, 86, and 87). Several of these filings were multiple-page submissions, often with numerous exhibits. In January 2008, he filed a 16-page motion for summary judgment claiming no issues of material fact.

(Paper 92).  His discovery responses, however, remained outstanding.

The Court first warned Mumley in May 2008 that a failure to provide discovery responses could result in dismissal.  He was warned again in July 2008, at which time the Court stated that discovery outstanding since 2007 was "unacceptable."  (Paper 117 at 6).  Since the first warning, Mumley has submitted six filings with the Court, (Papers 120, 121, 122, 130, 131 and 133), offering a range of excuses for his delay and non-compliance, but no indication of a willingness to complete the long-overdue responses.

In its last order, the Court struck Mumley's motion for summary judgment as a sanction for his conduct.  A more severe sanction is now warranted.  Indeed, given Mumley's failure to complete discovery responses despite his clear ability to engage in other litigation activities, and his "sustained and willful intransigence in the face of repeated and explicit warnings from the court that the refusal to comply with court orders . . . would result in dismissal of [the] action," Valentine v. Museum of Modern Art, 29 F.3d 47, 50 (2d Cir. 1994), the time has come for this case to end.

This case began in 2006.  Since that time, Mumley has spent significant time and energy corresponding with the Court, but has completely neglected his discovery obligations.  His myriad excuses, including efforts to fight terrorism and litigation-induced headaches, are unavailing.  The Court and the defendants have spent most of the last year trying to compel his participation in discovery, without success.

The record before the Court is sufficient to find that Mumley's conduct constitutes, at the very least, gross negligence.  Mumley's period of non-compliance with the rules governing the discovery process is now approaching two years.  The Court has warned him twice that continued failure to produce discovery responses and comply with orders might result in the dismissal of his case.  The Court has also tried imposing a lesser sanction, but Mumley still refuses to focus on the discovery requests served upon him in 2007.

The Second Circuit recently noted that "[p]ro se litigants, though generally entitled to 'special solicitude' before district court, are not immune to dismissal as a sanction for noncompliance with discovery orders." Agiwal

v. Mid Island Mortgage Corp., 2009 WL 35017, at *3 (2d Cir. Feb. 13, 2009) (quoting Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006)).  It is also well established that dismissal may be appropriate "so long as a warning has been given that non-compliance can result in dismissal."  Valentine, 29 F.3d at 47.  Dismissal pursuant to Rule 37 is appropriate "not merely to penalize those whose conduct may be deemed to warrant [dismissal], but to deter those who might be tempted to such conduct in the absence of such a sanction."  Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976).

Mumley has been warned repeatedly that further recalcitrance could result in the dismissal of his case. While he recently offered a host of excuses for his failure to comply with both his discovery obligations and this Court's orders, his explanations range from fanciful to plainly insufficient.  Furthermore, for this Court to allow a party to ignore his obligations for nearly two years, while at the same time defying Court orders, invites further abuses not only by this litigant, but by future litigants as well.  I therefore recommend that the Court GRANT the defendants' motion to dismiss, and that this case be

DISMISSED with prejudice.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Paper 119) be GRANTED, that Mumley's motion for protective order (120) be DENIED, and that this case be DISMISSED with prejudice.

Dated at Burlington, in the District of Vermont, this 18th day of February, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).